UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61184-CIV-SELTZER
CONSENT CASE

FISK ELECTRIC COMPANY,
         Plaintiff,

vs.

SFCS, INC. d/b/a SOUTH FLORIDA
CONSTRUCTION SERVICES, et al.,
         Defendants.
_____/

MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT (DE 23-1)

THIS CAUSE is before the Court upon Defendant Travelers Casualty & Surety Company of America's Motion for Summary Judgment and Supporting Memorandum of Law (DE 23-1), and the Court having heard argument of counsel and being sufficiently advised, it is hereby ORDERED and ADJUDGED that the Motion is DENIED.

I.    PROCEDURAL BACKGROUND

On August 21, 2007, Plaintiff Fisk Electric Company ("Fisk") instituted this diversity action seeking to recover damages on a payment bond executed and delivered to the City of Boca Raton by Defendants SFCS, Inc. ("SFCS") as principal and Travelers Casualty and Surety Company of America ("Travelers") as surety. Complaint (DE 1). Fisk also seeks to recover damages from SFCS for the alleged breach of its subcontract. Id. Travelers and SFCS have both answered the Complaint and filed Affirmative Defenses (DE 15, 19).

On February 7, 2008, Travelers filed the instant Motion for Summary Judgment and

Supporting Memorandum of Law (DE 23), together with its Statement of Undisputed Material Facts (DE 24). On March 3, 2008, Fisk responded (DE 27, 28), and on March 12, 2008, Travelers replied thereto (DE 31). Thereafter, on April 10, 2008, this Court conducted a hearing at which it received evidence and entertained argument of counsel (DE 36).[1]

The matter is now ripe for decision.

## II.   UNDISPUTED FACTS

On January 27, 2004, SFCS contracted with the City of Boca Raton ("City") to construct the Boca Raton Western Library ("project"). Complaint ¶ 8 (DE 1). In connection with the contract between the City and SFCS, on February 2, 2004, Travelers issued a statutory bond pursuant to Fla. Stat. § 255.05, which named Travelers as surety, SFCS as principal, and the City as obligee.[2] Complaint ¶ 10; Travelers Amended Answer ¶ 10 (DE 15). Thereafter, on February 11, 2004, SFCS and Fisk entered into a subcontract providing for Fisk to install all of the electrical, telecommunication, and security systems for the project. Complaint ¶ 9. The subcontract delineated the scope of Fisk's work and,

---

[1] Although evidentiary hearings on summary judgment motions are not customary, the Court nonetheless took testimony (solely) to determine whether there exist genuine issues of material fact. See Waskovich v. Morango, 2 F.3d 1292, 1296 (3rd Cir. 1993) ("[A] district court may hold an evidentiary hearing at which it receives oral testimony, documents, and other evidence relating to a pending summary judgment motion, but it may not rely on the material submitted at such a hearing as a means of resolving any genuine issues of material fact.").

[2] Although the record is unclear, SFCS's work on the City's project apparently began in earnest some time after February 2004. SFCS and the City are now litigating in the state court the City's determination of default and termination of the contract. See SFCS, Inc. v. City of Boca Raton et al., No. 502006CA002837XXXXMB (Fla. 15th Cir. Ct.).

in pertinent part, provided: "3) Subcontractor shall furnish and install . . . temporary lights & power, raceways & conduit systems. . . . 5) Subcontract shall provide all temporary electrical per OSHA and NEC requirements . . . . 15) Subcontractor shall de-energize and disconnect services to all Electrical Items and make all areas safe for demolition by others."  Complaint Ex. 1 at 14 (DE 1).  Fisk commenced its electrical work under the subcontract in July 2004.

On June 28, 2006, the City sent SFCS a letter notifying SFCS that it was in default of the construction contract and that the contract would be terminated within seven days. Gillman Affidavit ¶ 4, Ex. A (DE 23-2).  Pursuant to their contract, the City then sent SFCS another letter on July 7, 2006, informing it that the contract termination was now effective. Id.  Thereafter, on July 27, 2006, SFCS sent Fisk a letter informing it that work on the project was now "suspended"; SFCS also requested that Fisk provide it with the cost of terminating the subcontract, as well as the cost of "remobilizing" and completing all work on the project.  Woodward Decl. ¶ 2, Ex. A (DE 27).

III.   SUMMARY JUDGMENT STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where the pleadings and supporting materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  An issue is "genuine" if a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it must be decided to resolve the substantive claim or defense to which the motion is directed.  Id.; Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913 (11th Cir. 1993).

3

The moving party has the burden to establish the absence of a genuine issue as to any material fact. Adickes v. S.H. Kress and Co., 398 U.S. 144, 157 (1970). Once the movant has satisfied its initial burden, the non-moving party must then go beyond the pleadings to rebut any facts properly presented; it may do so through affidavits or other evidence showing the existence of genuine issues of material fact for trial. Fed. R. Civ. P. 56(e); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Adickes, 398 U.S. at 160.

Summary judgment is appropriate when, after adequate time for discovery, the non-moving party cannot establish an essential element on which it bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id.; see also Earley v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990).

In considering the motion, the Court must construe the evidence and the inferences drawn from the underlying facts in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Furthermore, facts asserted by the party opposing a summary judgment must be regarded as true if supported by affidavit or other evidentiary material. Coke v. General Adjustment Bureau, Inc., 640 F.2d 584, 595 (5th Cir. 1981)(quoting 10C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 2727 at 524-30 (1973)).

IV. THE ARGUMENTS

   A. Defendant Travelers

In its Motion, Travelers argues that Fisk's claim on the bond is time-barred because it failed to file suit within the one-year limitations period prescribed by Florida Statutes § 255.05(2)(a)2, (10). Travelers maintains that Fisk's work on the project terminated no later than July 7, 2006 – the same date on which the City informed SFCS that the termination of its contract was effective. Relying on this July 7, 2006 project termination date, Travelers reasons that Fisk's August 21, 2007 filing was beyond the one-year limitations period and, therefore, untimely. Travelers argues that any work Fisk may have performed after the July 7, 2006 termination date – including de-energizing the worksite and removing its trailer – was merely "incidental to the subcontract" and did not "extend the one year limitation on bringing suit under section 255.05." Travelers' Reply at 3 (DE 31).

In support of its argument, Travelers presented the testimony of Jerry Gillman, the President of SFCS. Gillman testified that he actually was not aware of any work performed by Fisk after May 21, 2006. He testified that he had told Fisk before July 7, 2006, that the project was being terminated. Gillman noted that although Fisk did send personnel to the job site on August 1, 2006, it was merely to inventory materials and equipment and that Fisk did nothing at the job site thereafter. Gillman further testified that he never asked Fisk to leave its trailer at the job site, and he believed that Fisk would remove it in a timely fashion. Gillman added that in October 2007 he called Fisk to inform them that SFCS's mediation efforts with the City had failed and that SFCS would not be returning to the

project. Finally, Gillman asserted that all the temporary power had been de-energized long before March 2007, the date Fisk maintains that it de-energized the power. According to Gillman, the only work that Fisk did in March 2007 was to come to the site and retrieve its trailer, which had previously been moved to the side of the road.

    B.    <u>Plaintiff Fisk</u>

Fisk argues that its August 21, 2007 filing was well within the one-year limitations period. Fisk bases its argument on its assertion that its "last day of furnishing labor" (from which date the limitations period begins to run) occurred in March 2007, not in July 2006. <u>See</u> Fisk's Response at 4-6 (DE 28).

According to Fred Woodward, Fisk's project construction manager, by May 2006, Fisk had completed 90% of its required work on the project. In July 2006, SPCS informed Fisk that its work was being suspended. And in August 2006, Fisk returned to the site to move inventory from its trailer into the building. Thereafter, until March 2007, the City did not permit any Fisk personnel to enter onto the job site. Woodward testified that during this time frame he believed Fisk would be permitted to return to the site to complete the remaining work on the project. Woodward's belief was based upon his conversations with SFCS's Gillman about the prospective costs associated with Fisk's return to the site. But in March 2007, Woodward was informed by SFCS that there would be no return to complete the work. Woodward was further informed that Fisk should proceed to de-energize the site and remove the trailers.

Woodward testified that he sent electricians to the site in early March 2007; the electricians spent two days de-energizing the site and removing the trailer. According to

6

Woodward, although this was a small percentage of the overall work – 32 man hours out of a total of 16,903 total man hours expended on the total project – it was very important work nonetheless. Fisk's contract required that it provide temporary power services and that it later de-energize those services to make the site safe; the project could not proceed with the temporary wires remaining in the ground. Woodward explained that the disconnecting of temporary services involved, among other tasks, disconnecting cables from their origination source, removing cable from the sleeves that ran beneath the road, and ensuring that the distribution panel was safe so that no one gets electrocuted. Because of the safety concerns, this work was required not only by the terms of the contract but also by the National Electric Code.

V.      DISCUSSION

   A.      Florida Law

In pertinent part, the "Florida Little Miller Act" provides:

> (2)(a)2. . . . The time period[] . . . for bringing an action against . . . a surety shall be <u>measured from the last day of furnishing labor</u>, services, or materials by the claimant . . . .
>
> (10) An action . . . must be instituted against . . . the surety on the payment bond or the payment provisions of a combined payment and performance bond <u>within 1 year after the performance of the labor</u> or completion of delivery of the materials or supplies.

Fla. Stat. § 255.05(2)(a)2, (10) (emphasis added).

Florida's Fourth District Court of Appeal has made clear that the "issue, when the 'final furnishing' of labor, services, or materials has occurred, is one to be resolved by the trier of fact," and that this "determination . . . will depend upon the circumstances of each

7

particular case." Michnal v. Palm Coast Development, 842 So. 2d 927, 933 (4th DCA 2003); see also Aronson v. Keating, 386 So. 2d 822, 823 (Fla. 4th DCA 1980) (noting that "an issue of fact remains regarding the nature of the final work performed").[3] The Fourth District has also articulated a four-part test – "the Aronson test" – to be applied in determining whether particular work constitutes a final furnishing of labor, asking whether the work done was: 1) in good faith; 2) within a reasonable time; 3) in pursuance of the terms of the contract; and 4) necessary to a finished job. Michnal, 842 So. 2d at 933 (quoting Aronson, 386 So. 2d at 823) (internal quotations omitted); accord Herpel, Inc. v. Straub Capital Corp., 682 So. 2d 661, 663 (Fla. 4th DCA 1996).[4] Although the Fourth District has recognized that "[t]here are no steadfast rules to apply in making this

---

[3] Broward County is the jurisdiction in which SFCS has its principal place of business, and Palm Beach County is the county in which the acts complained of accrued and the property at issue is located. Complaint ¶¶ 2, 5 (DE 1). Fisk, therefore, would have been required to bring any state court action in the Circuit Courts of either Broward County or Palm Beach County, both of which – absent governing authority by the Florida Supreme Court – are bound by the decisional law of the Fourth District Court of Appeal.

Sitting in diversity on issues of substantive state law, this Federal Court is similarly bound by the decisions of the Fourth District Court of Appeal. See Peoples Bank of Polk County v. Roberts, 779 F.2d 1544, 1545-46 (11th Cir. 1986) ("[Federal district courts sitting in diversity] are bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise); Farmer v. Travelers Indemnity, Co., 539 F.2d 562, 563 (5th Cir. 1976) (in a diversity action, the decision of the state intermediate appellate court where the plaintiff could have brought suit governs in the absence of a decision by the Florida Supreme Court).

[4] Although it was in the context of a mechanics lien statute – Fla. Stat. § 713.08(5) – that the Fourth District in Aronson, Herpel, and Michnal applied this test for determining whether particular work constitutes a "final furnishing of labor," this body of Florida's mechanics' lien law has been applied by analogy to claims on public works bonds under the Florida Little Miller Act. See Fed. Ins. Co. v. Exel of Orlando, Inc., 685 So. 2d 896, 897-98 (Fla. 5th DCA 1996) (applying Fifth District's mechanics' lien test to punch-list work on a public school bond).

8

determination," Michnal, 842 So. 2d at 933, it has provided some guidance by drawing a distinction between work done in fulfillment of the contract and work that is merely incidental to the contract:

> [W]ork done in fulfillment of the contract is contemplated by the contract and extends the time for filing, since the contract is not complete until the work is done. Remedial work in the nature of correction or repair does not extend the time for filing the claim . . . since the contract is already complete, and any additional work performed is merely incidental to the executed contract.

Herpel, Inc., 682 So. 2d at 663 (citing Aronson, 386 So. 2d at 823; Viking Builders, Inc. v. Felices, 391 So. 2d 302, 303 (Fla. 5th DCA 1980)). In making this determination, courts must be mindful that the Florida Little Miller Act "is remedial in nature" and should be construed liberally to achieve its intended purpose of "protect[ing] subcontractors . . . by providing them with an alternative remedy to mechanic's liens on public projects." Palm Beach County v. Trinity Indus., Inc., 661 So. 2d 942, 944 (Fla. 4th DCA 1995) (emphasis added).

    B.    Legal Conclusions

Considering the markedly dissimilar versions of events presented by the witnesses for the respective parties, and construing the evidence and the inferences drawn from the underlying facts in the light most favorable to the party opposing the motion, see Diebold, 369 U.S. at 655, it is readily apparent that there remain genuine issues of material fact that preclude entry of summary judgment.

First, the parties dispute whether Fisk acted in good faith by not de-energizing and removing its job trailer until March 2007. Fisk alleges that it was prevented by the City

from entering the job site after the work was suspended and that it was not permitted to again enter the site until March 2007. See Woodward Decl. ¶¶ 9-11 (DE 28-2). Travelers, however, claims that Fisk de-energized the temporary power to the various job trailers on the project site some time in July 2006, but that it chose to leave its trailer, which others then had to move to the side of the road.  And it argues that Fisk made no effort to remove that trailer prior to March 2007.

Second, the parties dispute whether Fisk's de-energizing of the temporary power and its removal of the trailers were completed within a reasonable time.  According to Fisk, it had been told by SFCS that its work on the project was merely suspended – not terminated – and that it was still possible it might be permitted to resume its work at a later time; for that reason, it left its trailer at the job site.  Travelers, however, maintains that it told Fisk in July 2006 that the project was terminated and in October 2006 that mediation with the City had failed.  Travelers maintains that it never told Fisk to leave its trailers on the project site.

Third, the parties disagree as to whether Fisk's de-energizing of the temporary power and its removal of the trailer constituted work performed pursuant to the main contract with SFCS.  Fisk claims that it "had previously furnished and installed the 'temporary lights & power' and the 'raceways & conduit systems' for the Project" pursuant to paragraph 3 (page 14) of its subcontract with SFCS.  Woodward Decl. ¶ 7; Complaint Ex. 1 (DE 1).  Fisk also states that its "in-scope" contract work included de-energizing and disconnecting electrical services and making all areas safe for demolition.  Woodward Decl. ¶ 8; Complaint Ex. 1.  Fisk argues that this work, albeit a small percentage of the

overall labor expended on the job site, was critical nonetheless; the construction project could not go forward with the temporary cables in the ground, and the de-energizing was paramount to the safety of the workers on the job site. Travelers disputes that this work was pursuant to the main contract. Travelers argues that Fisk's clean-up of the job site was merely incidental to the main contract; it involved nothing more than unplugging the power to and removing a trailer.

Finally, the parties genuinely dispute whether Fisk's de-energizing and removal of its trailer was necessary to a finished job on the project. Fisk explains that its work on the project was suspended before it was completed and that another electrical subcontractor had to eventually complete the job. But Fisk maintains that its de-energizing of the power was expressly required by the contract and pertinent safety codes and, furthermore, necessary for the construction project to proceed. Travelers counters that Fisk's work was not necessary to the finished job as it did not affect the building itself, only the Fisk trailer.

Travelers argues that even if there exist disputed facts, it is nonetheless entitled to summary judgment. According to Travelers, even if the Court were to accept Fisk's factual allegations as true, Fisk's removal of the trailer and de-energizing of the temporary power were "insubstantial" and, therefore, did not extend the time for filing its claim. With this argument, Travelers would have this Court apply the Fifth District's so-called "substantial-trivial" test for determining whether certain work is sufficiently substantial to warrant extending the time for filing a claim. See In re Twelve Oaks, Ltd., 59 B.R. 736, 742 (Bankr. M.D. Fla. 1986) (citing Viking Builders, Inc. v. Felices, 391 So. 2d 302 (Fla. 5th DCA 1980) (warranty and punch list work is trivial and unsubstantial and does not extend time for

11

filing); accord Fed. Ins. Co. v. Exel of Orlando, Inc., 685 So. 2d 896, 898 (Fla. 5th DCA 1996) ("punch list work is trivial and unsubstantal" when compared to work done on the direct contract).  The "substantial-trivial" test, however, has not been adopted by the Fourth District, which has written that "courts are to apply the Aronson test." Michnal, 842 So. 2d at 933; see also Delta Fire Sprinklers, Inc. v.  OneBeacon Ins. Co., 937 So. 2d 695, 699 (5th DCA 2006) (noting that the Fifth DCA applies the substantial-trivial test and that the Fourth DCA applies the Aronson/Michnal test).  Accordingly, the Court concludes that the amount of work Fisk performed in March 2007 does not govern the disposition of the summary judgment motion.

V.	ORDER

For the foregoing reasons, the Court finds that there exist genuine issues of material fact that preclude entry of summary judgment.  Accordingly, it is ORDERED and ADJUDGED that Defendant Travelers Casualty & Surety Company of America's Motion for Summary Judgment (DE 23-1) is DENIED.

DONE and ORDERED at Fort Lauderdale, Florida this 17th day of April 2008.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All Counsel of Record